UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE OPOKU-AGYEMANG,

               Plaintiff,

v.

UNKNOWN RUNCIE,

               Defendants.

                                /

Case No. 1:18-cv-1376

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff George Opoku-Agyemang.   While plaintiff is currently a state prisoner at a Michigan Department of Corrections (MDOC) facility, this lawsuit involves incidents which occurred at the Kalamazoo County Jail. This matter is now before the Court on defendant's motion for summary judgment (ECF No. 12).   The gist of defendant's motion is that plaintiff's complaint is barred by the three-year statute of limitations applicable to § 1983 cases because the incidents occurred in 2014, not in 2015 as alleged in his complaint.

### I.    Plaintiff's Complaint

Plaintiff alleged that on December 30, 2015, he was escorted to the Kalamazoo County Jail on alleged charges of assault and battery on Michelle McCallister, which also resulted in a parole violation.   Compl. (ECF No. 1, PageID.3). Plaintiff alleged that he was "erroneously considered suicidal and degraded to a point of placing me naked in a suicidal cell."   *Id*. Defendant Kalamazoo County Deputy/Officer Runcie and an individual named "Blazok" escorted

1

plaintiff into the cell in handcuffs which cut into his left wrist. *Id*. When plaintiff "tried to explain the damage" to his wrist, defendant Runcie tased him in the lower back while naked. *Id*. Plaintiff stated that he was tased again and "bounced up and down on the floor." *Id*. Plaintiff alleged that he received no medical attention and that he suffered injuries consisting of: excruciating pain in the back; inability to sleep for a full eight hours "due to excessive urination and electrical shocks in my hamstrings;" and the destruction of his sexual performance. *Id*. In making these claims, plaintiff contests his parole violation report which "indicated there was no penetration," presumably referring to the taser prongs penetrating his back. *Id*. Plaintiff alleged that he was "whisked to prison" where he spent 15 months and grieved the MDOC for inadequate medical attention related to his injuries. *Id*. Plaintiff alleged that defendant Runcie intentionally violated his rights, destroyed plaintiff's "body and essential organs under racial disparities [sic]", and abused his authority. *Id*. at PageID.4. Plaintiff seeks compensatory and punitive damages. *Id*. Defendant has moved for summary judgment.

## II.    Defendant's motion for summary judgment

### A.    Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

2

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).    "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Plaintiff did not file a response to the motion.[1]  "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).   The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

---

[1] In a separate order (ECF No. 22), the Court addressed plaintiff's claim that he was not served with copies of the motion.

3

### B.     Plaintiff's § 1983 claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."   *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).   To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. While plaintiff does not allege the violation of any particular constitutional right or federal statute, the Court construes his complaint as alleging violations of the 14th Amendment.

### 1.     Cruel and unusual punishment

During the relevant time period of this lawsuit, plaintiff was a pre-trial detainee in the custody of Kalamazoo County.   The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. "[T]he unnecessary and wanton infliction of pain .   .   .   constitutes cruel and unusual punishment forbidden by the Eighth Amendment."   *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). It is well established that an inmate has a cause of action under § l983 against prison officials for cruel and unusual punishment proscribed by the Eighth Amendment.   *Estelle v. Gamble*, 429 U.S. 97 (l976).   Pretrial detainees, such as plaintiff, are analogously protected from cruel and unusual punishment under the Due Process Clause of the Fourteenth Amendment.   *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).   *See Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) ("[a]lthough the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due

4

Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well") (internal citation omitted).

A viable Eighth Amendment claim consists of an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson*, 503 U.S. at 8.  To demonstrate the objective component, the plaintiff must demonstrate that he has been deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346).  However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks omitted).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id*.  The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

5

drawn that a substantial risk of serious harm exists, and he must also draw the inference."
*Farmer*, 511 U.S. at 837.

### 2.   Equal protection

By claiming racial disparities in his treatment, plaintiff appears to raise a claim for violation of the Equal Protection Clause of the 14th Amendment.   In order to maintain a Fourteenth Amendment Equal Protection claim, plaintiff must prove that he is a member in a protected class and that a state actor purposefully discriminated against him because of his class membership. *See Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000).

### C.   Discussion

As an initial matter, defendants seek summary judgment on the ground that plaintiff's complaint is untimely. The statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10).   *Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004). "In actions brought under § 1983, the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).

Plaintiff's complaint alleged that the incidents involving Ms. McCallister, his parole violation, his classification as a suicide risk, and being tasered at the Kalamazoo County Jail all occurred in December 30, 2015.   However, the investigation reports show that these incidents actually occurred on December 29, 2014.   The records reflect that plaintiff was charged with assault and battery – simple assault (domestic assault) against Ms. McCallister on December 29, 2014.   *See* Incident/Investigation Report (ECF No. 12-3, PageID.59).   The investigating

6

officer was Kalamazoo Department of Public Safety (KDPS) Officer Noble.  *Id*.  Ms.

McCallister reported that she and plaintiff had a sexual relationship in the past, that she was

hanging out with him throughout the day, that "he got mad about something" in front of Lesman's

Market, and that he began fighting her and hitting her head.  *Id*. at PageID.61.   She ended up on

the ground where plaintiff repeatedly kicked her in the head and stomach.  *Id*.   While the victim

was bruised, noticeably injured, and said that plaintiff "wanted to kill her," she refused treatment.

*Id*.

> Plaintiff was arrested for domestic assault by KDPS Officer Blazok.  *Id*. at

PageID.64-65.   When Blazok took plaintiff into custody, he characterized plaintiff as intoxicated,

and reported that plaintiff had a blood alcohol concentration (BAC) of .170%.   PageID.64.

Plaintiff "stated numerous times that he only had 23 days until he was off parole."  *Id*.   Blazok

escorted plaintiff to the KDPS headquarters for booking.  *Id*.   Blazok reported that after plaintiff

received his *Miranda* rights,

> [Plaintiff] made numerous spontaneous statements that he was guilty, that he
> "fucked up", that his life was over, and that he wanted to be hung in his cell.
> [Plaintiff] appeared to be on an emotional rollercoaster where he would go from
> being calm to being extremely agitated, however not combative with me.
> [Plaintiff] stated that at no point did he ever hit the female. When I advised
> [plaintiff] that there was video of the incident he said "I'm guilty if there's video of
> the incident".

PageID.64-65.   Blazok stated that he was unable to get a full statement from plaintiff "due to his

emotional rollercoaster state" and contacted his parole officer.  *Id*. at PageID.65.

> Officer Blazok reported that he brought plaintiff to the Kalamazoo County Sheriff's

Department Jail, at which time plaintiff became uncooperative with the deputies.  *Id*.   When

defendant Deputy Runcie came to the vehicle to take plaintiff to booking, plaintiff tried to pull

7

away and "Runcie gained compliance by placing [plaintiff] into an arm hold." *Id*.   Blazok

reported: that while talking with the clerk, plaintiff would not answer questions, "however did

make some insinuations that he wanted to hurt himself;" that plaintiff was taken to a changing

room "where he became more combative," kicking off his shoes and attempting to pull away once

the handcuffs were off; that Deputy Runcie and Deputy Zywicki took plaintiff to the ground; that

he assisted with removing plaintiff's clothes so that plaintiff could be placed into a green suit (due

to his "insinuations" that "he wanted to harm himself"); and, that plaintiff was walked to the

padded cell.   *Id*.

Officer Blazok also reported:    that once in the cell deputies told plaintiff numerous

times to go to the ground to his knees so they could leave the cell; that plaintiff did not do as told;

that at one point "[plaintiff] turned and attempted to strike the deputies with his fist;" that Deputies

Runcie and Zywicki were able to gain compliance after Sgt. Beer tasered plaintiff; that the taser

appeared to have slight effect on plaintiff; and that plaintiff was placed in handcuffs until deputies

were able to leave the room.   *Id*.

Deputy Runcie filed a separate Incident/Investigation Report on December 29,

2014, charging plaintiff with obstructing-resisting officer at the jail.   *See* Runcie Report (ECF No.

12-4, PageID.69).   Runcie's report is similar to Blazok's.   Runcie reported that as they entered

the padded room, "[plaintiff] made statements that he wanted to take me on one on one."   *Id*. at

PageID.72.   Runcie continued,

> [A]s [plaintiff] was positioned at the back of the cell with Deputy Zywicki and
> myself maintaining wristlocks on him I ordered him to kneel on the floor and was
> going to have him place his hands on the walls to facilitate our exit from the cell.
> [Plaintiff] stated he was not going to comply and as I attempted a compliance
> wristlock with [plaintiff's] left arm, he attempted to pull away and fight with
> deputies. Sgt. Beers deployed X-26 Taser probes to [plaintiff's] upper left back then

8

moved the taser to his lower extremities. [Plaintiff] was taken to the ground and handcuffed without further incident. He was examined by Nurse Bierema after the taser probes were removed from the suicide prevention gown and shown to be intact. Upon inspection of [plaintiff's] back where the taser probes had been deployed on the suicide prevention gown we discovered that the probes had not penetrated his skin.

PageID.72-73.

These reports indicate that incidents in plaintiff's complaint occurred on December 29, 2014.   On this date:   plaintiff was on parole; he was charged with assaulting Ms. McCallister; he was arrested; he was taken to the Kalamazoo County Jail for processing; he was considered suicidal; defendant Runcie and Officer Blazok escorted him into a cell while in handcuffs; he was tased; and, the investigation report stated that there was no penetration of the taser prongs. Plaintiff's allegations are virtually identical to the events reported by Officer Noble, Officer Blazok and Deputy Runcie, with the exception of allegations that it was defendant Runcie who tased him (while Runcie was present, Sgt. Beers tased plaintiff), that he was naked (rather than in the green suit), and that the taser prongs penetrated his back (rather than the green suit).   The Court notes that defendant's motion lacks affidavits from witnesses or copies of other documents which could have clarified the facts to a greater extent.   Nevertheless, the similarities between plaintiff's allegations in his complaint and the reported incidents of December 29, 2014 are undeniable.   These similarities lead the Court to conclude that plaintiff, either intentionally or unintentionally, alleged that the incidents occurred more than one year later on December 30, 2015.

Based on this record, plaintiff became aware of his claims against defendant Runcie on December 29, 2014. However, plaintiff did not file his complaint until December 12, 2018, nearly one year after the three-year statute of limitations expired.   Plaintiff's complaint is

9

untimely and barred by the statute of limitations.   Accordingly, defendant's motion for summary judgment should be granted.

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant's motion for summary judgment (ECF No. 12) be **GRANTED** and that this action be **TERMINATED**.

Dated:   June 30, 2020                                          /s/ Ray Kent
                                                                              United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court′s order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).